THE STATE OF CONNECTICUT *vs.* JOHN WASHELESKY ALIAS JOHN WISZNESKI.

Third Judicial District, New Haven, June Term, 1908.

BALDWIN, C. J., HAMERSLEY, HALL, PRENTICE and THAYER, Js.

It is for the jury to determine what weight shall be given to evidence and what facts it proves.

In respect to the weight given by this court to the action of the trial court in granting or refusing a motion for a new trial on the ground of a verdict against evidence, there is no distinction between a capital case and any other.

The charge in the present case reviewed and *held* not to warrant the criticism of the accused that it assumed the *corpus delicti* as a fact proven by the State.

Sentences or parts of a charge are to be considered in connection with the context and with the instructions as a whole.

Under General Statutes, § 1508, providing that no conviction can be had in a capital case without the testimony of at least two witnesses "or that which is equivalent thereto," it is not necessary that there should be the testimony of two witnesses to the homicidal act, nor indeed to every important fact. It is enough if there are two or more witnesses each testifying to different parts of the same transaction, or to different circumstances surrounding the case, tending directly to show the guilt of the accused, although there may not be two witnesses to any one fact or circumstance. And it is for the jury to say, under proper instructions from the court, whether the testimony in a given case meets the statutory requirement or not.

The State *v.* Washelesky.

In the present case the accused complained in this court, although not in the trial court, of a certain remark made by the State's Attorney in his argument to the jury. *Held* that aside from the lateness of the objection, the language used was not fairly open to the criticism made upon it; and furthermore, however it might be construed, could not have injured the accused in view of the explicit instructions of the trial judge.

Evidence of the connection of the accused with a murder may be shown after proof of the *corpus delicti,* and before the identity of the murdered victim has been established. The *corpus delicti* is shown by proof that some person has been killed and that some one else killed him.

It is within the discretion of the trial court to admit evidence before the foundation for it has been laid, upon the assurance of counsel that the connecting link will be made afterward.

An appellant cannot complain of questions the answers to which render them harmless.

The accused urged that certain questions put by the State's Attorney were not asked in good faith but solely for the purpose of prejudicing the witness and the defendant's case in the eyes of the jury. *Held* that while such conduct would have been most reprehensible, there was nothing in the questions themselves which justified the criticism made by the accused.

Evidence that the deceased was seen on the night of his disappearance and at that time had a weapon, was claimed by the accused solely upon the ground that the decedent, if armed, might have met somebody and been killed by the latter. *Held* that this inference was so remote that the exclusion of the evidence was within the sound discretion of the trial court.

There is no occasion for this court to appoint a time for the execution of a prisoner whose conviction of murder in the first degree has been affirmed on appeal prior to the expiration of a reprieve. Under such circumstances, chapter 70 of the Public Acts of 1905, p. 295, does not apply, and the warrant for the execution will be issued by the clerk of the trial court and for the date prescribed in the reprieve.

Argued June 5th—decided June 16th, 1908.

INDICTMENT for murder in the first degree, brought to the Superior Court in New Haven County and tried to the jury before *Robinson, J.;* verdict and judgment of guilty, and appeal by the accused. *No error.*

*Howard C. Webb* and *Levi N. Blydenburgh,* for the appellant (the accused).

The State *v.* Washelesky.

* *William H. Williams*, State's Attorney, and *Arnon A. Alling*, Assistant State's Attorney, for the appellee (the State).

THAYER, J. The defendant was found guilty of murder in the first degree, and moved that the verdict be set aside as against the evidence. The motion was overruled. His exceptions to this ruling are founded upon two grounds : first, that the evidence failed to establish the death of Peter Lukaszevitz, for the murder of whom he was indicted, and second, that the evidence failed to so connect the defendant with such death, if it had been proved, as to exclude every reasonable hypothesis of his innocence. The evidence by which the State claimed to have proved that the body was that of Lukaszevitz was wholly circumstantial, came from a large number of witnesses, and we shall not undertake to review it. It is sufficient to say that there was positive evidence tending to prove a large number of independent facts from which the inference could be logically drawn that the dead body, which when found was so decomposed as to be unrecognizable, was that of Lukaszevitz. This evidence was practically uncontradicted. We think that from the facts thus claimed to have been proved, the jury might reasonably be satisfied beyond reasonable doubt that the body was his. The weight to be given to the evidence, and whether it established the facts claimed by the State, were matters to be determined by the jury.

Having offered evidence to prove the death, and also proof that it was caused by human agency, the State offered evidence to prove that the defendant was the agent who caused it. One witness was produced who attempted to connect the defendant with Lukaszevitz on the night of the latter's disappearance, and to show that, after having been assaulted by the defendant, Lukaszevitz, when last

---

* Owing to the unavoidable absence of Mr. Williams during the latter part of the hearing, *Edward A. Harriman, Esq.,* made the closing argument for the State. *Reporter.*

The State *v.* Washelesky.

seen, was being pursued by the defendant, who was armed with a fence picket. This witness was not positive in her identification. Other evidence connecting the defendant with the crime tended to show previous quarrels between the parties, threats, motive, declarations subsequent to the disappearance of Lukaszevitz showing guilty knowledge, flight, and other guilty conduct by the defendant. This evidence, also, was substantially uncontradicted. It was evidence to be weighed by the jury. If they were satisfied that the witness who testified to the assault upon Lukaszevitz was truthful and that she was correct in her belief that the person who committed the assault was the defendant, and were also satisfied as to the existence of the motive for the crime, and of the fact of the previous threats and subsequent declarations, then there was very strong evidence upon which to find the guilt of the accused. It was the province of the jury to determine the value of this evidence tending to connect him with the crime, and to say whether it was equivalent to the testimony of two witnesses and therefore sufficient to establish his guilt of murder in the first degree. They were fully instructed as to the law bearing upon these matters, and have found him guilty of murder in the first degree. The trial judge who heard and saw the witnesses has refused to set aside the verdict. As we have repeatedly said, great weight is to be given to the action of the trial court in any case in granting or refusing a motion to set aside a verdict. This is especially true in a capital case, where it must be presumed that he gave the matter most serious consideration before passing upon the motion. We have carefully read the testimony and think that the jury were warranted in finding the verdict which they did.

The defendant complains that, in view of his claim upon the trial that the State had failed to prove the death of Lukaszevitz, or that it was the latter's body which had been found, and of the claim that his mere disappearance was not of itself sufficient proof of the *corpus delicti*, the charge of the court upon this branch of the case was not

only inadequate for the instruction of the jury, but was injurious to the accused, in that it assumed throughout that the *corpus delicti* was established. But the court very clearly stated to the jury that the State was bound to prove that Lukaszevitz was dead, and that his death was caused by human agency; and after saying to the jury that the State claimed to have established these facts, it continued: "The burden is upon the State to prove beyond a reasonable doubt that the dead body found, as claimed in the testimony for the State, was the body of Peter Lukaszevitz. This is one of the facts necessary to be established to warrant the conviction of the accused. This is necessary to be proven in order to establish the death of Peter, to establish the death of the man claimed to have been killed; a failure on the part of the State to establish such death beyond a reasonable doubt should be followed of course by an acquittal of the accused." The court then, after having stated and commented upon the other claims of the State, called the jury's attention to the claims of the defendant, and among them to his claim that it had not been proven that the dead body was that of Lukaszevitz. The jury could not have understood from the charge given them that the court assumed that the *corpus delicti* had been established; on the contrary, they could not have failed to understand that the parties were at issue upon the facts essential to its establishment, and that they, the jury, were to determine from the evidence whether those facts had been proven. The isolated sentences or parts of sentences to which reference is made in the defendant's brief as showing the court's assumption that the death of Lukaszevitz had been established, are found for the most part in those portions of the charge wherein the court is stating the State's, or defendant's, claims, and not the court's own opinion as to what had been established by the evidence. The remarks criticised are to be considered in connection with the context and with the charge as a whole. *State* v. *Rathbun*, 74 Conn. 524, 531, 51 Atl. 540. So considered, the charge presents no ground for the criticisms mentioned.

· Complaint is made of the court's charge as to the amount of evidence required to justify a verdict of murder in the first degree. The court having told the jury, in the language of § 1508 of the General Statutes, that "no person shall be convicted of any crime, punishable by death, without the testimony of at least two witnesses, or that which is equivalent thereto," instructed them that murder in the first degree is so punishable, and that the statute applies to convictions for that crime. He then said: "You will observe . . . that the requirements of this statute are not confined to the testimony of two witnesses; it goes further, and adds 'or that which is equivalent thereto,' that is, equivalent to the testimony of two witnesses. It is enough if the testimony is, in the minds of the jury, equivalent to that. Neither is it required that there should be two witnesses to every important fact. If there are two or more witnesses, each testifying to different parts of the same transaction, or to different circumstances surrounding the case, tending directly to show the guilt of the accused, it may be regarded as a sufficient compliance with the statute, although there may not be two witnesses to any one fact or circumstance." This was a correct statement of the law. *State* v. *Smith*, 49 Conn. 376, 385; *State* v. *Bailey*, 79 id. 589, 596, 65 Atl. 951; *State* v. *Marx*, 78 Conn. 18, 22, 23, 60 Atl. 690; *State* v. *Kelly*, 77 Conn. 266, 274, 58 Atl. 705. It was adapted to the case, and there was nothing in the facts or claims of the parties calling for any further or different statement. The statute does not require, as claimed by the defendant, that there shall be " testimony of two witnesses to the homicidal act." *State* v. *Smith*, 49 Conn. 376.

The defendant complains of certain remarks made by the State's Attorney in closing his argument to the jury, and assigns as one of the reasons of appeal and grounds for a new trial, that the court erred in permitting these · remarks to be made. The words complained of are: " The grand jurors of the county charge to you in behalf of the people of this commonwealth that John Washelesky, the

prisoner at the bar, is guilty of murder in the first degree. That is the law of the land; you must uphold it." It does not appear, nor is it claimed, that the defendant or his counsel objected to the remarks when made, or called the court's attention to them until after the verdict and judgment in the case had been rendered. Nor was the court below asked to grant a new trial because of these remarks of the attorney. While this court may, in very flagrant cases of abuse of the State Attorney's privilege, grant a new trial although the aggrieved party has failed to move for it in the court below, or to call that court's attention to the objectionable remarks, it is only in flagrant cases that it will do so. Ordinarily, unless such action has been taken in the trial court, such utterances afford no ground for an appeal or application to this court for a new trial. *State* v. *Laudano,* 74 Conn. 638, 645, 51 Atl. 860; *Hennessy* v. *Metropolitan Life Ins. Co.,* 74 Conn. 699, 710, 52 Atl. 490. We do not agree with the defendant's counsel that the State Attorney's conduct here complained of presents such a case. They say that he, by this utterance, in effect told the jury that the grand jury by its indictment had found the defendant guilty, and that it was the jury's duty to uphold the finding of the grand jury. We think that the language, standing alone, is not susceptible of this construction. He said to them, not that the grand jury had found the defendant guilty, but that they charged him in the indictment with murder in the first degree. But we must look to what precedes and follows the remark to understand what it was intended should be understood by it and what probably was understood. The record shows that the attorney had just stated, as the conclusions to be drawn from the evidence, that the defendant killed Lukaszevitz, that it was a wilful and not an accidental killing, that the defendant had been led on and on to the deed by his hatred of the deceased, that he killed him through hatred and malice, that he attempted to conceal the crime but had been overtaken by the law. The language complained of was then used, and was followed by

language urging the jury to bring in a verdict consistent with the evidence. From the entire passage the jury must have understood the State Attorney's statement to be that by the law of the land such a wilful, deliberate and premeditated killing, with actual malice, as he had just described as disclosed by the evidence, was murder in the first degree, that the grand jury had charged that crime in the indictment, and that the jury ought, by a verdict consistent with the evidence, to sustain the charge. The language used was not well chosen in all its parts to express the thought which it is apparent the State's Attorney had in mind to express. But in framing thoughts into phrases in the heat of extemporaneous argument it is inevitable that some lapses will occur, and it not infrequently happens that by the omission or addition of a word, or by a misarrangement of sentences, a different thought is expressed than was intended. The hearer, intent in following the argument, is seldom misled thereby. But whatever view be taken of the language used, no harm to the defendant can have resulted from it, as the jury were carefully cautioned by the court that in determining the question of the defendant's guilt they were to take the testimony as they had heard it from the witnesses, and the law from the court, and decide the case in accordance therewith. This exception, therefore, affords no ground for a new trial.

The remaining questions raised on the appeal relate to rulings upon questions of evidence. A question propounded to Birdsey A. Farnham, a witness for the State, calling for a fact tending to connect the defendant with the alleged crime, was objected to by the defendant upon the ground that the identity of the dead body as that of Peter Lukaszevitz had not been established beyond a reasonable doubt. The court overruled the objection and admitted the evidence. It is the defendant's claim that proof of the *corpus delicti* could not be complete without proof of the identity of the dead body, and that in trials for murder the body of the crime must be established before

evidence to connect the accused with it can be permitted. But the body of the crime is established by proof of these two facts : that one person has been killed, and that another person killed him, although the identity of neither the perpetrator nor the victim of the crime has been shown. *People* v. *Palmer*, 109 N. Y. 110, 114, 16 N. E. 529. These facts are to be proven by subsequent evidence to establish the guilt of the accused. The law fixes no rule as to the order of this proof. It is therefore within the discretion of the court. In the present case it is not questioned that before offering the evidence which was objected to, ample evidence had been introduced to prove that the person whose dead body had been discovered concealed in the sand was unlawfully killed by some one. The State was therefore justified in proceeding to connect the defendant with the crime, and the court's ruling permitting it was right.

The State offered in evidence an identification card of an account in a savings-bank under the name " John Wasieclewski," and its admission was objected to in behalf of the defendant until it should be connected with the accused. Upon the State Attorney's undertaking to so connect it, it was admitted against the defendant's objection. It was competent for the court, in its discretion, upon the assurance of the State's Attorney that it would be properly connected, to thus admit the testimony before the foundation for it had been laid. The finding of the court is that in its opinion sufficient evidence was in the case to warrant the jury, if they believed it, in finding that the account belonged to the defendant, and that the name " John Wasieclewski " in the identification card referred to, was intended to represent the defendant. As the sole foundation of the defendant's objection was thus removed, he cannot complain of the court's exercise of its discretion as to the order of the proof.

Annie Walszik, the former wife of Lukaszevitz but now the wife of another man and mother of a child by him, was called as a witness for the State and afterward for the de-

The State v. Washelesky.

fendant. Testimony tending to prove improper relations between her and the defendant during the life of her former husband had been introduced by the State, and upon her direct examination in behalf of the defendant she had given evidence tending to vindicate herself from such imputation. Upon cross-examination she was asked whether in giving her testimony in this case she did not deem it important to clear herself if she could of the imputation of any improper conduct with the defendant. The question was objected to, no reason being assigned therefor, and claimed as affecting her credibility. The objection was overruled, and the witness answered, " It is just the same to me ; I am telling the truth."

The same witness testified for the defendant to troubles which occurred at and just outside her home on the night of the alleged crime, between Lukaszevitz and one Grunowalska, after the defendant had left the house. She also testified that she knew of no trouble between Lukaszevitz and the defendant that night. The defendant claimed that this trouble about which the witness testified was the same which the State's witness had described, wherein the defendant was said to have assaulted Lukaszevitz. On cross-examination the State's Attorney, against the objection of the defendant, was permitted to ask the witness whether she told one Martin Bartusewicz anything about the defendant soaking Lukaszevitz with a club. The witness answered that she did not tell him that. The evidence was admissible in view of the witness' direct testimony. But the answers to this and the preceding question rendered those questions harmless to the defendant, and it is therefore unnecessary to inquire whether any objection could have been successfully interposed to either question, on the ground that the witness had originally been called by the State.

It is claimed, however, in behalf of the defendant, that it is apparent from the character of the questions that they were asked with no expectation of eliciting answers favorable to the State, but with the sole purpose of prejudicing

the witness and the defendant's case before the jury. And it is claimed that he was prejudiced thereby and the trial rendered unfair.

Such conduct on the part of the State's Attorney as is claimed by the defendant would be most reprehensible. What its effect would be upon the trial we need not consider, because we do not agree with counsel that it is apparent from the questions themselves that the purpose in asking them was what is claimed. As regards the first question, it would be apparent to the jury that the witness might deem it important to free herself from the claimed imputation. They would naturally consider that fact in weighing her testimony, had the question not been asked. How the asking of it and receiving the answer given, and which it is claimed was of such a character as the State's Attorney expected, could raise any prejudice against the witness, or the defendant, not existing before, is not explained. The second question was clearly pertinent and admissible. The fact that the question was asked, therefore, suggests no improper purpose in asking it. To impute the purpose which is claimed, we must assume that the State's Attorney knew or had good reason to believe that the witness had not used the expression attributed to her, and that he invented the expression and confronted her with a witness to whom he knew she had never uttered it. There is nothing in the question and nothing before us to in any way suggest such an assumption.

The defendant produced a witness by whom he proposed to prove that at about ten o'clock on the night of his disappearance, Lukaszevitz came alone to her house and that at that time he had a weapon. The State objected to the evidence and it was excluded. The sole ground upon which it was claimed was that if armed he might later have met somebody and the result been his death. It is true that meetings resulting in the death of one of the parties more frequently occur when one or both of them carry weapons. In the absence of any evidence concerning the meeting, the natural inference from the fact that Lukas-

zevitz was armed would be that the other party and not he would be the one to meet death in the encounter. Any inference from the fact that he was armed, either that some other person than the defendant killed him, or that if the defendant killed him it was under circumstances justifying, excusing or mitigating the crime, would be so remote as to leave the admission of the evidence within the sound discretion of the court. There was no error in excluding the evidence.

There are several remaining assignments of error upon rulings upon evidence, but they present no questions requiring discussion. The rulings are all sustainable upon familiar and well-settled rules of evidence. We pass them, therefore, with the remark that we find nothing erroneous in them.

There is no error.

In this opinion the other judges concurred.

After the foregoing opinion had been announced, the State's Attorney applied to this court for an order fixing the date of the execution, and upon that application the following opinion of the court was handed down on June 25th, 1908, at a special session held at New Haven:—

BALDWIN, C. J. The State's Attorney has moved for the appointment of a time for the execution of the judgment by which sentence of death was pronounced against the defendant by the Superior Court in New Haven county. This motion rests upon the assumption that General Statutes, § 1522, as amended by the Public Acts of 1905, p. 295, Chap. 70, applies to the present case. That provides that when, by reason of the pendency of an appeal to this court from a judgment of sentence to death, such judgment shall not be executed at the time assigned therefor, if no error be found, this court, after its decision on such appeal, shall appoint the time for the execution of said judgment, and its clerk shall issue a writ of execution accordingly.

The judgment of the Superior Court against the defendant was that he should be hanged on the first day of April, 1908. On March 16th, 1908, he was granted a reprieve by the Governor until the first day of July, 1908. That day is still in the future. The judgment of the Superior Court could not be executed at the time assigned therefor by that court, by reason of the reprieve. Our decision on the appeal was announced before the expiration of the time for which the reprieve was granted. The reprieve appointed a new time for the execution of the sentence. Thereupon that became the time legally assigned for its execution.

Under our decision on the appeal, the judgment, of which the sentence of death formed a part, stands good. The warrant of execution is therefore to be issued upon it by the clerk of the Superior Court.

The motion is denied.

In this opinion the other judges concurred.